136 N.J. Super. 442 (1975)
346 A.2d 615
AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, BLOOMFIELD COLLEGE CHAPTER, AND EDWARD F. ROBINSON, ET AL., INDIVIDUALLY, AND ON BEHALF OF THE FACULTY AT BLOOMFIELD COLLEGE, PLAINTIFFS-RESPONDENTS,
v.
BLOOMFIELD COLLEGE, A LICENSED INSTITUTION OF HIGHER EDUCATION OF THE STATE OF NEW JERSEY, MERLE F. ALLSHOUSE, AS PRESIDENT OF BLOOMFIELD COLLEGE, AND INDIVIDUALLY, AND C. RICHARD CARLSON, ET ALS., AS MEMBERS OF THE BOARD OF TRUSTEES OF BLOOMFIELD COLLEGE, AND INDIVIDUALLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1975.
Decided October 16, 1975.
*443 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. Clyde A. Szuch argued for appellants (Messrs. Pitney, Hardin & Kipp, attorneys; Ms. Virginia Long Annich and Mr. Armen Shahinian, on the brief).
*444 Mr. William S. Greenberg argued for respondents (Messrs. Sterns & Greenberg, attorneys; Mr. Michael J. Herbert, on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
Defendants appeal from a judgment entered in favor of plaintiffs reinstating the individual plaintiffs to the Bloomfield College faculty and declaring invalid those portions of a resolution of the Board of Trustees of Bloomfield College dated June 21, 1973 terminating the tenure of plaintiffs and other remaining faculty members. The judgment was entered after a nonjury trial before Judge Antell, who articulated the reasons for his determination in a comprehensive opinion. American Assoc. of Univ. Profs. v. Bloomfield College, 129 N.J. Super. 249 (Ch. Div. 1974).
The action was brought to vindicate the right of tenured members of the faculty to continuous employment under the contractual undertaking of the college and to set aside the action of the board of trustees in breach of that undertaking.
The significant tenure provisions of the controlling document, the Faculty Handbook, are the following:
Subparagraph C(3):
* * * a teacher will have tenure and his services may be terminated only for adequate cause, except in case of retirement for age, or under extraordinary circumstances because of financial exigency of the institution.
* * *
Subparagraph C(6):
Termination of continuous appointment because of financial exigency of the institution must be demonstrably bona fide. A situation which makes drastic retrenchment of this sort necessary precludes expansion of the staff at other points at the same time, except in extraordinary circumstances.
These were the contractual provisions upon which defendants relied to justify the tenure termination.
*445 Appellants urge several grounds for reversal.

Burden of Proof
They assert that the trial judge erred in assigning the burden of proof to defendants on the concurrent existence of the following contractual conditions permitting termination: (1) "extraordinary circumstances because of financial exigency of the institution" and (2) "Termination of continuous appointment because of financial exigency must be demonstrably bona fide." The trial court placed the burden of proving these conditions as a prerequisite for terminating tenure on defendants and found that they failed to sustain this burden.
It is manifest that under the controlling agreement among the parties the affected members of the faculty had attained the protection of tenure after completing a seven-year probationary service. This was their vested right which could legally be divested only if the defined conditions occurred. The proof of existence of those conditions as a justifiable reason for terminating the status of the plaintiffs plainly was the burden of defendants.
Where a party seeks to avoid a contractual obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it. [Fitzmaurice v. Van Vlaanderen Mach. Co., 110 N.J. Super. 159, 165 (App. Div. 1970), aff'd 57 N.J. 447 (1971)] 3A Corbin, Contracts § 749 (1960).
The trial judge's reliance on this principle of law was manifestly correct in the denial of the motion for involuntary dismissal as well as in its findings of fact.
Court's Fnding as to the Absence of a Bona Fide Financial Exigency as the Motivation for the Tenure Termination
Giving due deference to the fact-finding function of the trial judge, we nevertheless conclude that there is insufficient *446 credible evidence to contradict the existence of "extraordinary circumstances because of financial exigency" in view of the admitted absence of liquidity and cash flow.[1]
In our opinion, the mere fact that this financial strain existed for some period of time does not negate the reality that a "financial exigency" was a fact of life for the college administration within the meaning of the underlying contract. The interpretation of "exigency" as attributed by the trial court is too narrow a concept of the term in relation to the subject matter involved. A more reasonable construction might be encompassed within the phrase "state of urgency." In this context, the evidence was plentiful as to the proof of the existence of the criterion of the financial exigency required by the contract.
In this vein it was improper for the judge to rest his conclusion in whole or in part upon the failure of the college to sell the Knoll property which had been acquired several years before in anticipation of the creation of a new campus at a different locale. The trial judge recognized that the exercise of the business judgment whether to retain or sell this valuable capital asset was exclusively for the board of trustees of the college and not for the substituted judgment of the court. Despite this, he engaged in an extensive analysis to demonstrate the potential ability of the institution to emerge from its dilemma by disposing of the Knoll property, thereby realizing substantial cash assets and relieving itself of the recurring financial loss involved in maintaining the same. Whether such a plan of action to secure financial stability on a short-term basis is preferable to the long-term planning of the college administration is a policy decision for the institution. Its choice of alternative is beyond the scope of judicial oversight in the context of this litigation. Hence the emphasis upon the alternative *447 use of this capital asset by the trial judge in reaching his conclusion that a financial exigency did not exist was unwarranted and should not have been the basis of decision.
Does the foregoing view by the court lead to the conclusion that the ultimate finding in favor of plaintiffs is erroneous? The answer is no.
The existence of the "financial exigency" per se does not necessarily mean that the termination of tenure was proper. The key factual issue before the court was whether that financial exigency was the bona fide cause for the decision to terminate the services of 13 members of the faculty and to eliminate the tenure of remaining members of the faculty. Under subparagraph C(6) of the contract not only must the financial exigency be demonstrably bona fide but the termination because of that exigency must also be bona fide. Causation and motivation therefore emerged as the prime factual issue for determination by the trial judge. Was the financial exigency was the bona fide cause for the decision to the termination resolution? Or was the resolution dictated by other motivations, with reliance upon the existing financial picture a mere subterfuge? The answers to these queries were essential in order to determine whether the action under attack complied with the contractual obligation of the college to demonstrate that its interference with tenure was a bona fide result of its financial status.
The trial judge made full factual findings on this issue of bona fide causation and arrived at the conclusion that defendants failed to establish "by a preponderance of the evidence that their purported action was in good faith related to a condition of financial exigency within the institution." This finding is supported by the subordinate findings and analysis contained in his opinion.
We conclude that there was adequate, substantial and credible evidence to support the court's finding on this issue. In light of the applicable scope of appellate review in a nonjury case, we abstain from interfering therewith. Rova *448 Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 162 (1964).

Remedy of Specific Performance
Appellants also attack the propriety of the remedy of specific performance reinstating plaintiffs to their positions. They assert that this remedy runs counter to the line of legal precedents wherein such relief is generally denied in cases involving personal service contracts. Sarokhan v. Fair Lawn Memorial Hospital, Inc., 83 N.J. Super. 127, 133 (App. Div. 1964); 5A Corbin, Contracts § 1204 (1964).
We agree with the trial judge that the general rule is not inflexible and that the power of a court of equity to grant such a remedy depends upon the factual situation involved and the need for that type of remedy in a particular case. See 11 Williston, Contracts, § 1424 at 786. A lack of precedent, or mere novelty, is no obstacle to equitable relief which may be appropriate in a particular fact complex. Cooper v. Nutley Sun Printing Co., Inc., 36 N.J. 189, 198 (1961). In view of the uncertainty in admeasuring damages because of the indefinite duration of the contract and the importance of the status of plaintiffs in the milieu of the college teaching profession, it is evident that the remedy of damages at law would not be complete or adequate. See opinion below, 129 N.J. Super. 273 et seq.; Fleischer v. James Drug Stores, 1 N.J. 138 (1948); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947); Pomeroy's Equity Jurisprudence (5 ed. 1941), § 1401. The relief granted herein is appropriate to achieve equity and justice.
Judgment is affirmed.
NOTES
[1] Subsequent to the decision below the college filed a Chapter XI petition in the Federal Bankruptcy Court.